## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
REGINALD LEE ROGERS, SR.,          )
                                   )
                  Plaintiff,       )
                                   )
          v.                       )     1:07CV326
                                   )
DAVIDSON COUNTY DETENTION          )
CENTER MAJOR SHOAF,                )
                                   )
                  Defendant.       )
-----------------------------------
REGINALD LEE ROGERS, SR.,          )
                                   )
                  Plaintiff,       )
                                   )
          v.                       )     1:07CV327
                                   )
DAVIDSON COUNTY SHERIFF            )
DAVID S. GRICE,                    )
                                   )
                  Defendant.       )
```

## MEMORANDUM OPINION, ORDER, AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

These related cases come before the Court on various related motions. In Case No. 1:07CV326, Defendant Shoaf has filed a Motion for Summary Judgment (Docket Entry 16) and a Motion to Strike (Docket Entry 20). In Case No. 1:07CV327, Defendant Grice also has filed a Motion for Summary Judgment (Docket Entry 19) and a Motion to Strike (Docket Entry 23). For the reasons that follow, the Defendants' summary judgment motions should be granted and their motions to strike will be denied as moot.

## BACKGROUND

These cases began on April 13, 2007, when Plaintiff filed form Complaints pursuant to 42 U.S.C. § 1983 (which Plaintiff dated as completed on April 10, 2007). (Case No. 1:07CV326, Docket Entry 1

at 4; Case No. 1:07CV327, Docket Entry 1 at 4.) In the caption of the first form Complaint, Plaintiff identified the defendant as "Davidson County Detention Center Major Shoaf." (Case No. 1:07CV326, Docket Entry 1 at 1.)[1] In the caption of the second form Complaint, Plaintiff identified the defendant as "Davidson County Sheriff David S. Grice." (Case No. 1:07CV327, Docket Entry 1 at 1.) In section IV of the first form Complaint (entitled "Parties"), under the heading for "Defendant(s)," Plaintiff listed "Major Shoaf," whom he further described as a "Davidson County Major" employed at the "Davidson County Detention Center." (Case No. 1:07CV326, Docket Entry 1 at 2.) In the second form Complaint, under said heading, Plaintiff listed "Sheriff David S. Grice," the "Davidson County Sheriff." (Case No. 1:07CV327, Docket Entry 1 at 2.) The Court therefore construes these two cases as brought only against "Major Shoaf" and "Sheriff David S. Grice," respectively.[2]

_____

[1] Plaintiff often uses only capital letters, as do certain forms he attached to his Complaint. (See Case No. 1:07CV326, Docket Entry 1; Case No. 1:07CV327, Docket Entry 1.) In quoting such text, for ease of reading, this Memorandum Opinion utilizes standard capitalization conventions.

[2] In light of this determination, the Court treats the portions of the summary judgment motions by Defendants Shoaf and Grice that contend that the "Davidson County Detention Center" fails to qualify as a "person" under § 1983 as moot. The Court notes that Plaintiff did institute an action against the Davidson County Detention Center and officials thereof, as well as separate actions against various individual officials. See Rogers v. Davidson County Detention Ctr. of Lexington N.C. et al., 1:07CV141 (M.D.N.C.) (compl. filed Feb. 9, 2007); Rogers v. Davidson County Detention Ctr. Lt. Bailey, 1:07CV323 (M.D.N.C.) (compl. filed Apr. 13, 2007); Rogers v. Davidson County Detention Ctr. Capt. Hartsell, 1:07CV324 (M.D.N.C.) (compl. filed Apr. 13, 2007); Rogers v. Davidson County Detention Ctr. Sgt. Milam, 1:07CV328 (M.D.N.C.) (compl. filed Apr. 13, 2007). By Order dated January 31, 2008, the Court (per United States Magistrate Judge Russell A. Eliason), consolidated all five of Plaintiff's cases filed on April 13, 2007, for purposes of discovery. (Case No. 1:07CV326, Docket
(continued...)

-2-

Section V of the two form Complaints contains the same preprinted instructions for the "Statement of Case." (Case No. 1:07CV326, Docket Entry 1 at 3; Case No. 1:07CV327, Docket Entry 1 at 3.) These instructions directed Plaintiff to set out the facts of his case "by describing how each defendant . . . is personally involved in depriving [him] of [his] rights. Include relevant times, dates, and places." (Id.) They further state: "Number and set forth each separate claim in a separate paragraph." (Id.)

In Case No. 1:07CV326, following these admonitions, Plaintiff set forth these claims against Defendant Shoaf:

1) on March 5, 2007, Defendant Shoaf received service of a prior civil rights complaint filed by Plaintiff and, thereafter, unjustifiably ordered Plaintiff into solitary confinement (Case No. 1:07CV326, Docket Entry 1 at 3);

2) on or after March 5, 2007, Defendant Shoaf threatened Plaintiff's life "multiple times" (id.);

3) on or after March 5, 2007, Defendant Shoaf denied Plaintiff "regular mail process by invading [his] privacy by reading and withholding [his] personal and legal mail" (id.);

---

[2](...continued)
Entry 14; Case No. 1:07CV327, Docket Entry 14.) One of the grounds for summary judgment in the motions by Defendants Shoaf and Grice concerns Plaintiff's alleged failure to comply with a discovery order entered by Magistrate Judge Eliason. (See Case No. 1:07CV326, Docket Entry 16 at 1, Docket Entry 17 at 11-12; Case No. 1:07CV327, Docket Entry 19 at 1, Docket Entry 20 at 11.) The Court rejects this argument because, as Defendants Shoaf and Grice's briefs acknowledge, the discovery order in question (and the motion to compel underlying said order) were filed only in the related Case No. 1:07CV141. (See Case No. 1:07CV326, Docket Entry 17 at 3-4; Case No. 1:07CV327, Docket Entry 20 at 3-4.)

4) on or after March 5, 2007, including on March 6, 7 and 9, 2007, Defendant Shoaf improperly blocked Plaintiff's family members from finding out about Plaintiff's whereabouts, including by telling "them they had the wrong number" when they called and by impersonating Defendant Grice on the telephone (id.);

5) on March 12, 2007, Defendant Shoaf told Plaintiff that he would remain in solitary confinement while Defendant Shoaf talked with a prosecutor about having Plaintiff charged with a crime for "threaten[ing] a 24 year old little girl with a lawsuit" (id.); and

6) on March 12, 2007, Defendant Shoaf threatened Plaintiff with death and "ripped up the collection consent fee forms" (presumably related to one of Plaintiff's federal suits) and stated "these will never make it, you are given no access!" (id. at 3-4).

In Case No. 1:07CV327, Plaintiff alleged this "Statement of Claim": "March 5, 2007 at 5:00 P.M. Sheriff David S. Grice allowed his Major Shoaf to improperly solitary confine me 24 hours a day without access to trust account for commissary items, family visitation, phone communication, and trial court process for that Superior Court Session." (Case No. 1:07CV327, Docket Entry 1 at 3.)

It appears from a published decision of the North Carolina Court of Appeals that, at the time of the incidents in question, Plaintiff was a pretrial detainee in Davidson County:

> [Plaintiff and his wife] separated in 2004. [Plaintiff] moved out of the house but [his wife] retained custody of their two children. On 19 November 2005 [Plaintiff] forcibly entered the home [his wife] shared with the two children and forced [his wife] to have sex with him. [Plaintiff's wife] reported the incident to the police and [Plaintiff] was arrested on 20 November 2005.

-4-

> . . . .
> [Plaintiff] was tried before a jury from 14 to 17 August
> 2007 in Superior Court, Davidson County.  On 17 August
> 2007 the jury returned guilty verdicts for felonious
> breaking and entering, habitual misdemeanor assault,
> second degree rape and second degree sexual offense.

State v. Rogers, 194 N.C. App. 131, 132, 136, 669 S.E.2d 77, 79, 81 (2008), pet. for discretionary review denied, ___ N.C. ___, 676 S.E.2d 305 (2009).[3]

Section III of each of the form Complaints contains identical preprinted questions under the heading "Exhaustion of Inmate Administrative Remedies."  (Case No. 1:07CV326, Docket Entry 1 at 2; Case No. 1:07CV327, Docket Entry 1 at 2.)  Question A asks: "Did you present the facts of each claim relating to your complaint to the Inmate Grievance Commission or any other available administrative remedy procedure?"  (Id.)  On each Complaint, Plaintiff checked the space for "Yes."  (Id.)  As to the further inquiry, "When did you file your grievance?", on each Complaint, Plaintiff wrote:  "February 1, 2007."  (Id.)

The form Complaints further inquired as follows:  "Did you appeal any adverse decision to the highest level possible in the administrative procedure?"  (Id.)  On each Complaint, Plaintiff answered "No."  (Id.)  In response to the request for an explanation for this failure, in the form Complaint against Defendant Shoaf, Plaintiff stated:  "March 5, 2007 upon being served with civil rights action Major Shoaf, placed me in 24 hour

_____

[3] Record evidence also indicates that Plaintiff was a pretrial detainee in Davidson County at the time of the relevant events.  (See Case No. 1:07CV326, Docket Entry 16-1 at 1.)

solitary confinement without just cause with no access to account for anything, no communication, made multiple and repeated death threats on my life, banned me access to the courts." (Case No. 1:07CV326, Docket Entry 1 at 2.) In the same portion of the form Complaint against Defendant Grice, Plaintiff wrote virtually the same words. (See Case No. 1:07CV327, Docket Entry 1 at 2.)

Plaintiff attached photocopies of the same two "Davidson County Jail Inmate Grievance Form[s]" to the two form Complaints. (Case No. 1:07CV326, Docket Entry 1 at 5-6; Case No. 1:07CV327, Docket Entry 1 at 5-6.) The first such form identifies "Today's Date" as March 27, 2007, and the "Date of Incident" as March 5, 2007. (Case No. 1:07CV326, Docket Entry 1 at 5; Case No. 1:07CV327, Docket Entry 1 at 5.) Plaintiff marked the spaces indicating that he was pursuing both a "Grievance" and an "Appeal." (Id.) As to the "Persons Involved," Plaintiff identified only himself. (Id.) On the line seeking a "Summary of Incident/ Complaint," Plaintiff wrote: "Solution? Multiple apologies made but will comply to [sic] necessary!" (Id.) In response to the grievance form's directive asking inmates to "indicate where the incident took place and why [they] feel that this should be filed as a grievance or appeal," Plaintiff made the following statement:

> Major, what [sic] we or I have to do to see common ground? Relief? I am still awaiting your answer of my first request?
> Why? Or how can I go about positives here when all I receive is [sic] negatives? I only want the same treatment as any other human being, what do I have to do to achieve fairness? Tell me?

(Id.)

-6-

The second attached "Davidson County Jail Inmate Grievance Form" lists "Today's Date" as April 3, 2007, and the "Date of Incident" as March 24, 2007. (Case No. 1:07CV326, Docket Entry 1 at 6; Case No. 1:07CV327, Docket Entry 1 at 6.) Plaintiff marked the spaces reflecting his pursuit of a "Grievance" (not an "Appeal"). (Id.) Regarding the "Persons Involved," Plaintiff listed "Nurses Julie and Fran," "Officer Rabon," and "my personal and private areas." (Id.) In response to the grievance form's request for a "Summary of Incident/Complaint," Plaintiff responded "Both." (Id.) After the pre-printed instruction asking inmates to "indicate where the incident took place and why [they] feel that this should be filed as a grievance or appeal," Plaintiff wrote:

> I need to contact by phone "now" please my doctor as instructed by the nurses here because they can't medically examine my scrotum spider bite here[.] I have been bitten since 3-24-07[.] I have written multiple requests [sic] have been unanswered, I need emergency medical assistance, I must talk with my doctor[.] Officer Rabon knows what the nurses said[.] I can't used [sic] these phones to call hospital[.]

(Id.)

Finally, Plaintiff attached to the form Complaints a "Davidson County Jail Inmate Request Form" dated March 27, 2007, directed to "Ms. Moore, Jail Accountant." (Case No. 1:07CV326, Docket Entry 1 at 7; Case No. 1:07CV327, Docket Entry 1 at 7.) It states:

> How should I comply?
> I'm willing to do what it takes for redemption, Ma'am.
> I have repeatedly apologized for the conflict of interest about you, Ms. Moore.
> I am willing to display my earnest and deepest regards for remorse in writing and asks [sic] that I make office phone contact with my law offices to end the conflict of interest, Ma'am.

-7-

(Id.)  Below the foregoing comments, in different handwriting, the following words appear:  "Write the Captain.  This don't [sic] deal with Jail Finance."  (Id.)

On October 1, 2008, Defendants Shoaf and Grice moved for summary judgment in their respective cases, based (among other things) upon Plaintiff's failure to exhaust administrative remedies, the absence of any record evidence that could establish a constitutional violation, and the qualified immunity doctrine. (Case No. 1:07CV326, Docket Entry 16 at 1, Docket Entry 17 at 12-15; Case No. 1:07CV327, Docket Entry 19 at 1, Docket Entry 20 at 12-14.)  In support of their respective motions, Defendants Shoaf and Grice attached affidavits and authenticated documents (and pointed to affidavits and authenticated documents filed in related cases).  (See Case No. 1:07CV326, Docket Entry 16 at 2, Docket Entry 16-1 (Shoaf Aff. and attached jail records), and Docket Entry 16-8 (Miller Aff.) (verifying authenticity of jail records provided to Defendant Shoaf); Case No. 1:07CV327, Docket Entry 19 at 2, Docket Entry 19-1 (Grice Aff. and attached jail records), and Docket Entry 19-3 (Miller Aff.) (verifying authenticity of jail records provided to Defendant Grice).)

In their affidavits, Defendants Shoaf and Grice both acknowledged that they caused Plaintiff's placement in solitary confinement on March 5, 2007.  (Case No. 1:07CV326, Docket Entry 16-1 at 2; Case No. 1:07CV327, Docket Entry 19-1 at 2.)  Defendant Shoaf explained the surrounding circumstances as follows:

-8-

5. On or about March 5, 2007, Jacqueline Nicole Moore, the detention center Finance Officer informed me that on or about February 28, 2007, she received a Grievance from Plaintiff in which he referred to her by the nickname "Nik Nak." . . . Ms. Moore told me that "Nik Nak" was a family nickname and to her knowledge no one in the Detention Center knew of it. She did not know Plaintiff outside of the Jail and was frightened that he had somehow learned of the nickname.

6. I investigated the incident and could not determine how Plaintiff learned of Ms. Moore's nickname. After conferring with Sheriff David Grice, it was decided that for safety reasons, Plaintiff should be placed on "23 hour lockdown" status until we could determine that Ms. Moore would be safe.

7. Per Sheriff's Office Policy, an inmate placed on "23 hour lockdown" status for disciplinary reasons is only allowed what he is legally entitled to. Privileges such as commissary and visitation may be suspended. In Plaintiff's case, these privileges were suspended. With regard to Plaintiff's visitation, I also felt that Plaintiff may be communicating with someone outside of the Detention Center about Ms. Moore. Therefore, suspending his visitation privileges also served as a safety precaution.

8. Plaintiff was not denied what he was legally entitled to (i.e., personal hygiene items, religious materials, legal materials and mail). . . .

9. Plaintiff was released back to general population on April 10, 2007. Plaintiff had apologized to Ms. Moore, and at that time I felt that there were no longer safety concerns.
        . . . .

11. Plaintiff alleges that he was denied telephone communication and access to his Lawyer [sic]. This is untrue. . . . Inmates in "lockdown" status are allowed access to a portable phone which is kept on a cart. Plaintiff has access to [this phone]. . . .

(Case No. 1:07CV326, Docket Entry 16-1 at 2 (internal emphasis omitted).)

Defendant Grice's affidavit states in relevant part:

> 3.   On or about March 5, 2007, Major Shoaf reported to
> me that the Detention Center Finance Officer, Jacqueline
> Nicole Moore had informed him that Plaintiff had referred
> to her by the nickname "Nik Nak", in a grievance he had
> written her. . . .   This was a family nickname and Ms.
> Moore had no idea how Plaintiff could have learned of it.
> Ms. Moore was frightened that Plaintiff may have been
> talking to someone outside the Detention Center about
> her.
>
> 4.   Major Shoaf and I took this possible threat
> seriously.   We decided that the matter should be
> investigated further and that Plaintiff should be placed
> on "lockdown" until the matter was resolved.

(Case No. 1:07CV327, Docket Entry 19-1 at 1-2 (internal emphasis

omitted).)

Defendants Shoaf and Grice both attached documents that they

identified as accurate copies of the "Davidson County Jail Inmate

Grievance Form" that reportedly alarmed Ms. Moore.   (Case No.

1:07CV326, Docket Entry 16-2; Case No. 1:07CV327, Docket Entry 19-

2.)   It bears Plaintiff's name and apparent signature as the

complaining inmate, lists "Today's Date" as February 28, 2007, and

contains a check mark on the "Appeal" line (not the "Grievance"

line).   (Id.)   In the body of the document, Plaintiff stated:

> Excuse me Ms. Jacqueline 'Nik Nak' Moore, I did not
> receive 2 letters on Monday [sic] 19, 2007 only had 1
> letter 2 pictures, [sic] the religious material for
> Tuesday the 20th was given to me on Friday Feb. 23, 2007,
> what is going on, if I'm not receiving the items, then
> someone is reading my mail, which constitutes invasion of
> privacy, it is a federal violation to do so, my mail
> should have been given to me on the time that even you
> specified in which it was not, my access is only limited
> as far as mail communication only, why deny my right to
> mail?   It's real nonsense [sic] has to stop[.]

(<u>Id.</u> (emphasis in original).)  In the margin of the form, he added: "I never even once mentioned anything about my legal mail being opened,?!  <u>You</u>!  <u>did</u>!  <u>Ms. Moore</u>!  You did not even file the grievance I got all three pages of it!  How are we supposed to trust your word which goes hidden!"  (<u>Id.</u> (emphasis in original).)

On October 9, 2008, Plaintiff filed a document lacking a proper caption that contained the heading "In the civil case 1:07 141 & 323 & Rogers vs Davidson County Detention Official" and an introductory sentence that stated "I oppose the defendants [sic] motion to dismiss through summary judgment under Section 1983 against my civil rights as a citizen of the United States of America . . . ."; as one would expect, the Clerk's Office docketed this filing only in the two cases Plaintiff referenced by number. See <u>Rogers v. Davidson County Detention Ctr. of Lexington N.C., et al.</u>, No. 1:07CV141 (M.D.N.C.) (Docket Entry 43); <u>Rogers v. Davidson County Detention Ctr. Lt. Bailey</u>, No. 1:07CV323 (M.D.N.C.) (Docket Entry 23).  Nowhere in said document did Plaintiff respond to the non-exhaustion or qualified immunity arguments by Defendants Shoaf and Grice.  (<u>See</u> <u>id.</u>)  Further, although portions of Plaintiff's foregoing filing arguably assert that he has meritorious claims, Plaintiff offers no arguments directly addressing the viability of his claim regarding the decision by Defendants Shoaf and Grice to place him in solitary confinement on March 5, 2007.  (<u>See</u> <u>id.</u>)

On April 7, 2009, in a different case, Plaintiff filed a document captioned as "Written Objections III and Opposition Response Federal Civil Rules." <u>Rogers v. Davidson County Detention</u>

-11-

<u>Ctr. of Lexington N.C., et al.</u>, No. 1:07CV141 (M.D.N.C.) (Docket Entry 47). Nowhere in said document did Plaintiff address the non-exhaustion or qualified immunity arguments raised by Defendants Shoaf and Grice. <u>See</u> <u>id.</u> Nor did said filing present arguments regarding the alleged unlawfulness of the decision by Defendants Shoaf and Grice to place Plaintiff in solitary confinement on March 5, 2007. Despite the fact that the foregoing document was not docketed in their respective cases, Defendants Shoaf and Grice each thereafter moved to strike it as an untimely and procedurally improper response to his summary judgment motion. (Case No. 1:07CV326, Docket Entry 20; Case No. 1:07CV327, Docket Entry 23.)

DISCUSSION

Exhaustion of Administrative Remedies

"In response to an ever-growing number of prison-condition lawsuits that were threatening to overwhelm the capacity of the federal judiciary, Congress in 1996 passed the Prison Litigation Reform Act ["PLRA"]." <u>Anderson v. XYZ Correctional Health Servs., Inc.</u>, 407 F.3d 674, 676 (4th Cir. 2005). "Of importance to this case is the PLRA's exhaustion-of-remedies requirement." <u>Id.</u> "[T]he PLRA's exhaustion requirement is mandatory." <u>Id.</u> at 677. Moreover, the United States Court of Appeals for the Fourth Circuit has held that "a complaint may clearly show that an inmate has not exhausted his administrative remedies." <u>Id.</u> at 682.[4]

---

[4] The PLRA's exhaustion requirement applies to "prisoner[s] confined in any jail, prison, or other correctional facility," 42 U.S.C. § 1997e(a), and, for purposes of this requirement, "'prisoner' means <u>any person</u> incarcerated or
(continued...)

-12-

As detailed above, in the Complaints in these two cases, Plaintiff alleges that, through six different acts (or series of acts) committed between March 5 and 12, 2007, Defendant Shoaf violated Plaintiff's federal constitutional rights and that Defendant Grice violated the United States Constitution by allowing Defendant Shoaf to commit one of those acts (i.e., the placement of Plaintiff in solitary confinement on March 5, 2007). (See Case No. 1:07CV326, Docket Entry 1 at 3-4; Case No. 1:07CV327, Docket Entry 1 at 3.) As set forth above, the instant Complaints also acknowledge that the facility where these alleged events occurred had a grievance process, that Plaintiff knew about that process, and that he used said process while in pretrial detention. In addition, the Complaint in Case No. 1:07CV326 confirms that Plaintiff did not exhaust his administrative remedies as to five of his six claims (i.e., all but the claim regarding his alleged unjustified placement in solitary confinement on March 5, 2007).

As to these five claims, the Court should follow the approach that it and other district courts in the Fourth Circuit have taken in similar situations and dismiss these claims on non-exhaustion grounds. See Terrell v. Wilson, No. 7:09CV130, 2009 WL 1076295, at *1-2 (W.D. Va. Apr. 21, 2009) (unpublished); Lawson v. Berg, C/A No. 9:07-907-JFA-GCK, 2008 WL 4200328, at *1-3 (D.S.C. Sept. 2, 2008) (unpublished); Moore v. Scotland County Jail, No. 1:05CV527,

---

    [4](...continued)
detained in any facility who is accused of, convicted of, sentenced for, or
adjudicated delinquent for, violations of criminal law or the terms and
conditions of parole, probation, pretrial release, or diversionary program," 42
U.S.C. § 1997e(h) (emphasis added).

2006 WL 2168940, at *1-2 (M.D.N.C. June 28, 2006) (unpublished) (Dixon, M.J.), recommendation adopted, No. 1:05CV527 (M.D.N.C. July 31, 2006) (unpublished) (Beaty, J.).

In this regard, the Court notes first that Plaintiff's conclusory allegation that he filed a grievance as to the claims at issue carries no weight. As documented above, Plaintiff's instant Complaints allege that he filed the grievance(s) in question on February 1, 2007. Clearly, no grievance filed on that date could have addressed Defendants' alleged discrete acts of misconduct that occurred on or after March 5, 2007. Further, Plaintiff states that he failed to exhaust the administrative process by "appeal[ing] any adverse decision to the highest level possible in the administrative procedure." (Case No. 1:07CV326, Docket Entry 1 at 2.) Moreover, Plaintiff's attempt to excuse his failure to exhaust administrative remedies by citing his custody in solitary confinement lacks merit. Plaintiff submitted at least one grievance form and one inmate request form on March 27, 2007, submitted another grievance form on April 3, 2007, and drafted five federal lawsuits as of April 10, 2007. Plaintiff thus cannot credibly assert that, during his time in solitary confinement (much less after his release from such confinement on April 10, 2007), he lacked the ability to prepare an administrative appeal.

Finally, Plaintiff has not alleged that he lacked knowledge of the relevant grievance system (nor, given his attachment to the Complaints of Davidson County Jail grievance forms he submitted during this time period, could Plaintiff plausibly so allege). As

-14-

another district court in the Fourth Circuit recently observed when
confronted with analogous circumstances: "[T]he court cannot
conclude that the grievance system was unavailable to Plaintiff on
the facts of this case. Plaintiff was advised of and knew about
the existence of the system, and he could have asked for any
further information he required." Graham v. County of Gloucester,
668 F. Supp. 2d 734, 740 (E.D. Va. 2009).[5]

One of Plaintiff's attachments to his Complaints in these
cases, however, causes the Court to reach a different conclusion as
to the remaining claim against Defendant Shoaf and the sole claim
against Defendant Grice. Specifically, as noted above, Plaintiff

---

[5] Even if Plaintiff failed to appreciate his entire range of options in the
Davidson County Jail grievance system, that fact would not excuse his
noncompliance with the PLRA's exhaustion requirement. See id. at 741 (citing
authority from the Third, Sixth, Seventh, Eighth, and Tenth Circuits in holding
that "a prisoner's claim that the grievance system was unavailable to him because
he lacked full knowledge of the specifics of the grievance process does not
excuse or waive a failure to exhaust administrative remedies"). Any approach
that permitted prisoners to bypass administrative review and move directly into
federal court simply by alleging some lack of knowledge "would be undoubtedly
routinely invoked." Id. at 740. In such a context, federal courts would have
to evaluate the legitimacy of these regular claims of ignorance from prisoners
seeking to avoid exhaustion, "a time-consuming task . . . fraught with
uncertainty." Id. To construe the PLRA's exhaustion requirement in a fashion
that produced such results would conflict with both the spirit and letter of the
PLRA, which "was intended to 'reduce the quantity and improve the quality of
prisoner suits'" and which contains no provision authorizing a court "'to excuse
compliance with the exhaustion requirement, whether on grounds of futility,
inadequacy or any other basis.'" Id. at 739-40 (quoting Porter v. Nussle, 534
U.S. 516, 524 (2002), and Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000),
respectively). Given that Plaintiff knew something about the grievance process
and has failed to allege that he tried, but was blocked from learning more, the
few cases recognizing a "lack of knowledge" exception to the PLRA's exhaustion
requirement would not apply in this case even if the Court found such authority
persuasive. See id. at 741 n.3 (noting that decisions from Eleventh Circuit,
Southern District of New York, and Northern District of Illinois "are not all
precisely and factually on point with the case at bar wherein Plaintiff had
knowledge of the existence of the grievance system, and no evidence suggests that
Defendants frustrated any effort by Plaintiff to learn more about the system").

-15-

attached to each of these Complaints a copy of a "Davidson County Jail Inmate Grievance Form" dated March 27, 2007, that identifies the "Date of Incident" as March 5, 2007. (Case No. 1:07CV326, Docket Entry 1 at 5; Case No. 1:07CV327, Docket Entry 1 at 5.) Plaintiff marked the spaces indicating that he wished to pursue both a "Grievance" and an "Appeal." (Id.) Although, on the line seeking identification of "Persons Involved," Plaintiff listed only himself, elsewhere in the body of the grievance, he made clear that he was seeking "fairness" from Defendant Shoaf. (Id.) Further, Plaintiff referred to his prior submission of a request for relief and to Defendant Shoaf's alleged failure to respond. (Id.) Other aspects of the document, including Plaintiff's statement "multiple apologies made but will comply to [sic] necessary" (id.), would support an argument that this document constitutes an appeal of the denial by silence of a prior grievance regarding the decision to place Plaintiff in solitary confinement on March 5, 2007, based on the perception that Plaintiff had used a family nickname of a jail employee in a grievance as an implied threat.[6]

Given the foregoing plausible (though just barely) reading of the form dated March 27, 2007, attached to Plaintiff's Complaints

---

[6] Another document attached to Plaintiff's instant Complaints, the "Davidson County Jail Inmate Request Form" also dated March 27, 2007, directed to "Ms. Moore, Jail Accountant," (Case No. 1:07CV326, Docket Entry 1 at 7; Case No. 1:07CV327, Docket Entry 1 at 7), further bolsters this view. In said document, Plaintiff asks "How should I comply?" and states "I'm willing to do what it takes for redemption, Ma'am. I have repeatedly apologized for the conflict of interest about you, Ms. Moore. I am willing to display my earnest and deepest regards for remorse in writing and asks [sic] that I make office phone contact with my law offices to end the conflict of interest, Ma'am." (Id.)

-16-

in these cases, the Court is unwilling to find (under <u>Anderson</u>, 407 F.3d at 682) that said Complaints facially establish that Plaintiff failed to exhaust his administrative remedies as to his claim(s) that Defendants Shoaf and Grice violated the Constitution by wrongfully placing him in solitary confinement on March 5, 2007. In addition, because Defendants Shoaf and Grice have not disputed the authenticity of the form dated March 27, 2007, the Court questions the propriety of granting summary judgment as to any claim arising from the decision to place Plaintiff in solitary confinement on March 5, 2007, based on non-exhaustion, notwithstanding Plaintiff's failure to file a proper summary judgment response on that issue. <u>Cf. Kinetic Concepts, Inc. v. ConvaTec Inc.</u>, No. 1:08CV918, 2010 WL 1667285, at *6-8 (M.D.N.C. Apr. 23, 2010) (unpublished) (analyzing this Court's Local Rules 7.3(f), 7.2(a), and 7.3(k) and discussing authority supporting proposition that failure to respond to argument amounts to concession). In light of the requirement of liberal construction, <u>see Erickson v. Pardue</u>, 551 U.S. 89, 94 (2007), the Court concludes that Plaintiff's attachment to his Complaint of the form dated March 27, 2007, suffices to raise a material question of fact as to whether Plaintiff exhausted his administrative remedies regarding his claim(s) against Defendants Shoaf and Grice for wrongful placement in solitary confinement on March 5, 2007.[7]

---

[7] The fact that Plaintiff failed to name Defendant Grice in said document would not preclude a finding of exhaustion. <u>See Jones v. Bock</u>, 549 U.S. 199, 219 (2007) ("[E]xhaustion is not per se inadequate simply because an individual later (continued...)

As to all of the other claims in Plaintiff's Complaint against
Defendant Shoaf,[8] the Court unequivocally finds that said Complaint
clearly shows that Plaintiff did not exhaust his administrative
remedies. As a result, those claims are subject to dismissal under
<u>Anderson</u>. Further, because, after Defendant Shoaf raised the non-
exhaustion issue, Plaintiff "fail[ed] to file a response [on that
issue] within the time required by [this Court's Local Rules], the
motion will be considered and decided as an uncontested motion, and
ordinarily will be granted without further notice." M.D.N.C. R.

---

[7](...continued)
sued was not named in the grievances."); <u>Moore v. Bennette</u>, 517 F.3d 717, 726
(4th Cir. 2008) (same). The Court emphasizes that it does not find that
Plaintiff <u>has</u> exhausted his administrative remedies as to this claim; indeed,
Plaintiff's grievances may well have failed to provide sufficient information
regarding his objections to the decision to place him in solitary confinement on
March 5, 2007, to satisfy his exhaustion burden. <u>See generally</u> <u>Griffin v.
Arpaio</u>, 557 F.3d 1117, 1120-21 (9th Cir. 2009) (discussing specificity required
to exhaust after <u>Jones</u>); <u>Johnson v. Johnson</u>, 385 F.3d 503, 522-23 (5th Cir. 2004)
(outlining factual content necessary to exhaust administrative remedies), <u>cited
with approval in</u> <u>Jones</u>, 549 U.S. at 219; <u>Jackson v. Hopper</u>, No. 1:05CV96, 2007
WL 4320741, at *1 n.3 (M.D.N.C. Jan. 25, 2007) (unpublished) (reaffirming
decision to dismiss certain claims for non-exhaustion after <u>Jones</u> and explaining
continuing requirement that grievances contain sufficient detail). The Court
simply concludes that, on the existing record, the form dated March 27, 2007,
precludes summary judgment in favor of Defendants Shoaf and Grice on the
exhaustion issue as to claims based on the decision to place Plaintiff in
solitary confinement on March 5, 2007.

[8] As set forth above, these claims are: 1) on and after March 5, 2007,
Major Shoaf threatened Plaintiff's life on multiple occasions; 2) after March 5,
2007, Major Shoaf unlawfully read and otherwise interfered with Plaintiff's mail;
3) after March 5, 2007, including on March 6, 7 and 9, 2007, Major Shoaf
improperly blocked Plaintiff's family members from finding out about Plaintiff's
whereabouts; 4) on March 12, 2007, Major Shoaf told Plaintiff that he would
remain in solitary confinement due to Plaintiff's threat to file a lawsuit
against an unidentified female (presumably a jail employee); and 5) on March 12,
2007, Major Shoaf threatened Plaintiff with death, destroyed documents related
to Plaintiff's federal lawsuits, and made statements indicating that Plaintiff
would not have access to federal court.

-18-

7.3(k).[9]  Because Plaintiff has conceded the non-exhaustion issue as to these claims, see Kinetic Concepts, 2010 WL 1667285, at *6-8, and because (unlike with the claim based on Plaintiff's placement in solitary confinement on March 5, 2007) the record contains no evidence from which a reasonable fact-finder could find in Plaintiff's favor as to the exhaustion issue, the Court should grant summary judgment based on failure to exhaust as to all of Plaintiff's other claims against Defendant Shoaf.  See generaly Emmett v. Johnson, 532 F.3d 291, 297 (4th Cir. 2008) ("Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" (quoting Fed. R. Civ. P. 56(c))).

Merits of the Possibly Exhausted Claim(s) and Qualified Immunity

The United States Supreme Court recently clarified that when a prisoner-plaintiff files a "mixed" complaint, i.e., one that contains one or more claims as to which said plaintiff has failed to exhaust administrative remedies and one or more claims as to which said plaintiff has exhausted administrative remedies, "the court should proceed with the exhausted claims . . . [, rather

---

[9] Plaintiff's status as a pro se litigant does not excuse his inaction. "As the United States Supreme Court observed in McNeil v. United States, 508 U.S. 106, 113 (1993), '[the Supreme Court] ha[s] never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.' Accordingly, pro se litigants are not entitled to a general dispensation from the rules of procedure or court-imposed deadlines." Hewitt v. Hutchins, 309 F. Supp. 2d 743, 748-49 (M.D.N.C. 2004) (internal parallel citations and second set of internal quotation marks omitted).

-19-

than] dismiss the entire action [because] any one claim is not properly exhausted." Jones v. Bock, 549 U.S. 199, 219-24 (2007). As noted above, in Case No. 1:07CV326, Plaintiff has failed to exhaust his administrative remedies as to all but one of his six claims, i.e., his claim regarding his placement in solitary confinement on March 5, 2007. In addition, Plaintiff may have failed to exhaust his administrative remedies as to this sixth claim (which also represents his only claim in Case No. 1:07CV327 – his action against Defendant Grice); however, the Court does not believe that said question can be resolved by way of summary judgment on the current record. Under these circumstances, the Court could defer consideration of the merits-based grounds for summary judgment raised by Defendants Shoaf and Grice until after a final determination on the remaining exhaustion issue or the Court could proceed with an analysis of the remaining summary judgment issues. In this case, the Court concludes that the interests of judicial efficiency favor moving directly to the merits-oriented questions raised in the summary judgment motions.[10]

---

[10] In opting to consider issues beyond exhaustion, the Court notes that resolving whether Plaintiff exhausted his administrative remedies as to the decision to place him in solitary confinement on March 5, 2007, likely would require a bench trial and might generate satellite litigation about Plaintiff's entitlement to a jury trial on such issues. Compare Pavey v. Conley, 544 F.3d 739 (7th Cir. 2008) (holding that prisoner had no right under Seventh Amendment to jury trial on contested issues related to his alleged failure to exhaust administrative remedies) with Grantham v. Watson, No. 2:09CV60, 2010 WL 1753765, at *4 (W.D. Va. Apr. 30, 2010) (unpublished) (denying defendants' motion for summary judgment and stating that "conclusion [as to whether evidence cited by defendants established plaintiff's failure to exhaust], however, must be left to the jury" (emphasis added)).

As to Plaintiff's claim regarding the decision to place him in solitary confinement on March 5, 2007, Defendants Shoaf and Grice have moved for summary judgment on two related, merits-based grounds. First, they contend that Plaintiff has failed to identify any record evidence that would permit a reasonable fact-finder to determine that they committed a constitutional violation. (Case No. 1:07CV326, Docket Entry 16 at 1-2, Docket Entry 17 at 15-18; Case No. 1:07CV327, Docket Entry 19 at 2, Docket Entry 20 at 14-15.) Second, Defendants Shoaf and Grice assert that, even if there was evidence that could sustain a finding of a constitutional violation on their part, Plaintiff has failed to show that, at the time they acted, their conduct violated a clearly established right so as to deprive them of the defense of qualified immunity. (Case No. 1:07CV326, Docket Entry 16 at 2, Docket Entry 17 at 18-19; Case No. 1:07CV327, Docket Entry 19 at 2, Docket Entry 20 at 16.)

"Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Emmett, 532 F.3d at 297 (quoting Fed. R. Civ. P. 56(c)). "When a party has submitted sufficient evidence to support its request for summary judgment, the burden shifts to the nonmoving party to show that there are genuine issues of material fact." Id. (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-88 (1986)). "The party opposing a properly supported motion for summary

-21-

judgment may not rest upon mere allegations or denials of his
pleading, but 'must come forward with specific facts showing that
there is a genuine issue for trial.'" Id. (quoting Matsushita, 475
U.S. at 587 (internal emphasis and quotation marks omitted)). See
also Francis v. Booz, Allen & Hamilton, Inc., 452 F.3d 299, 308
(4th Cir. 2006) ("Mere unsupported speculation is not sufficient to
defeat a summary judgment motion if the undisputed evidence
indicates that the other party should win as a matter of law.").

As set forth above, the parties agree that Defendants Shoaf
and Grice caused Plaintiff's placement in solitary confinement on
March 5, 2007.[11]  The Court therefore must decide if a material
question of fact exists as to whether, by taking that action,
Defendants Shoaf and Grice violated the Constitution (specifically,
the Due Process Clause) and/or whether (in light of the qualified
immunity doctrine) any such violation contravened clearly
established law.  To resolve these issues, the Court must examine
the rather elaborate legal regime that governs claims by pretrial
detainees concerning their treatment by jail officials.

As a general proposition, "the Supreme Court [has] held that
a prisoner incarcerated as a result of a criminal sentence ha[s] no

---

[11] Because, as noted above in the Background section, Defendant Grice
candidly acknowledged that he directly participated in the decision to place
Plaintiff in solitary confinement on March 5, 2007, the Court will not analyze
Plaintiff's claim against Defendant Grice as a "claim[] regarding supervision of
an employee leading to an alleged constitutional violation," that, according to
Defendant Grice, would require proof of a "custom, pattern, policy or practice
condoning, encouraging or otherwise emphasizing the violation of an individual's
rights by [Defendant] Grice."  (Case No. 1:07CV327, Docket Entry 20 at 14-15
(citing Monell v. Department of Social Servs., 436 U.S. 658 (1978)).)

liberty interest in being free from segregated confinement imposed as a disciplinary measure.  The Court made clear, however, that the justification for such an approach was grounded in its determination that such discipline 'falls within the expected perimeters of the sentence imposed by a court of law.'" <u>Rapier v. Harris</u>, 172 F.3d 999, 1002 n.2 (7th Cir. 1999) (quoting <u>Sandin v. Conner</u>, 515 U.S. 472, 485 (1995)).[12]  In contrast, "[t]he pretrial detainee, who has yet to be adjudicated guilty of any crime, may not be subjected to any form of 'punishment' [as a function of his or her status as a detainee]." <u>Martin v. Gentile</u>, 849 F.2d 863, 870 (4th Cir. 1988) (quoting <u>City of Revere v. Massachusetts Gen. Hosp.</u>, 463 U.S. 239, 244 (1983)).  <u>See also</u> <u>Rapier</u>, 172 F.3d at 1004-05 ("The Due Process Clause simply guarantees convicted prisoners the right to be free of punishment that is beyond the normally expected incidents of prison life.  However, pretrial confinees are not similarly situated; they are not under a sentence

---

[12] Although the Supreme Court found that sentenced prisoners had no general liberty interest in remaining within the general prison population, it left open the possibility that a liberty interest could arise for a sentenced prisoner placed in segregation if the conditions of that confinement "'impose[d] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" <u>Bevarati v. Smith</u>, 120 F.3d 500, 502 (4th Cir. 1997) (quoting <u>Sandin</u>).  Defendant Shoaf invites this Court to apply that analysis to Plaintiff's instant claim. (<u>See</u> Case No. 1:07CV326, Docket Entry 17 at 16).  As discussed above, the Court concludes that the Supreme Court expressly limited <u>Sandin</u>'s terms to cases involving sentenced prisoners and that a different legal framework applies to claims by pretrial detainees.  This conclusion follows the uniform position the Court has identified in the <u>published</u> decisions of the federal appeals courts.  <u>See</u> <u>Rapier</u>, 172 F.3d at 1002-05 & n.2 (discussing and following rulings from First and Ninth Circuits in declining to apply "<u>Sandin</u> analysis" to claim by pretrial detainee).  <u>But see</u> <u>Perez v. Anderson</u>, 350 Fed. Appx. 959, 962 (5th Cir. 2009) (citing prior circuit ruling from sentenced prisoner context generally foreclosing constitutional claims regarding solitary confinement in affirming dismissal of pretrial detainee's claim regarding same).

of confinement, and therefore it cannot be said that they ought to expect whatever deprivation can be considered incident to serving such sentence." (internal citation to Sandin omitted)).

At the same time, the Supreme Court and the Fourth Circuit have recognized that "not every inconvenience encountered during pretrial detention amounts to 'punishment' in the constitutional sense." Martin, 849 F.2d at 870 (citing Bell v. Wolfish, 441 U.S. 520, 537 (1979)). Indeed, the Supreme Court has declared that, because of the "legitimate interests that stem from [their] need to manage the facility in which the individual is detained," government officials may impose "administrative measures that go beyond those that are, strictly speaking, necessary to ensure that the detainee shows up for trial. For example, the Government must be able to take steps to maintain security and order at the institution . . . ." Bell, 441 U.S. at 540. Moreover, the Supreme Court has emphasized that decisions about such matters fall "'peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters.'" Id. at 540-41 n.23 (quoting Pell v. Procunier, 417 U.S. 817, 827 (1974)).

Accordingly, "[t]o establish that a particular condition or restriction of his confinement is constitutionally impermissible 'punishment,' the pretrial detainee must show either that it was (1) imposed with an expressed intent to punish or (2) not

-24-

reasonably related to a legitimate nonpunitive governmental objective, in which case an intent to punish may be inferred." Martin, 849 F.2d at 870 (citing Bell, 441 U.S. at 538-40). Moreover, a pretrial detainee must show that the challenged condition imposed restrictions of sufficient severity to implicate the Constitution. See Bell, 441 U.S. at 539 n.21 ("'There is, of course, a de minimis level of imposition with which the Constitution is not concerned.'" (quoting Ingraham v. Wright, 430 U.S. 651, 674 (1977))). Finally, even if the restriction imposed upon a pretrial detainee qualifies as punishment and exceeds the de minimis threshold, the detainee must make a further showing if jail officials imposed the restriction as "punish[ment] for misconduct that occur[red] while [the detainee] is awaiting trial in a pretrial confinement status. Notably, the basis for this punishment is not the underlying crime of which he stands accused; rather this punishment is based upon the detainee's actions while in pretrial confinement." Rapier, 172 F.3d at 1003 (citing First and Ninth Circuit decisions). In that context, a pretrial detainee must show that officials imposed the sanction in question without adequate procedural safeguards. See id. at 1005 ("[A]lthough it is permissible to punish a pretrial detainee for misconduct while in pretrial custody, that punishment can be imposed only after affording the detainee some sort of procedural protection.").

To avoid summary judgment, Plaintiff therefore must identify an evidentiary basis from which a reasonable fact-finder could determine that: 1) his placement in solitary confinement on March

5, 2007, constituted more than a de minimis imposition on his liberty; 2) Defendants Shoaf and Grice placed Plaintiff in solitary confinement to punish him (as evidenced by their express intent or by the fact that said action bore no reasonable relationship to a legitimate nonpunitive governmental objective); and 3) any such punishment either did not relate to misconduct that occurred during Plaintiff's pretrial confinement or was imposed without adequate procedural safeguards.  In addition, because Defendants Shoaf and Grice have raised qualified immunity defenses, the Court also must determine whether, on March 5, 2007, "it would [have] be[en] clear to a reasonable officer that this conduct was unlawful in the situation he confronted." <u>Saucier v. Katz</u>, 533 U.S. 194, 202 (2001).  <u>See also</u> <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982) (holding that government officials "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known").

The Court turns first to the question of whether Plaintiff's placement in solitary confinement for a little over a month represented more than a de minimis imposition on his liberty interests.  In their summary judgment briefs, Defendants Shoaf and Grice point to record evidence that, even while in solitary confinement (which they call "lockdown"), pursuant to Davidson County Detention Center policy, Plaintiff enjoyed access to anything "to which he was legally entitled." (Case No. 1:07CV326, Docket Entry 17 at 18; Case No. 1:07CV327, Docket Entry 20 at 15.)

-26-

By way of example, they note that, although his visitation and commissary privileges were suspended, Plaintiff (again, per policy) was allowed out of his cell for an hour a day for exercise and was permitted access to a telephone. (Case No. 1:07CV326, Docket Entry 17 at 17; Case No. 1:07CV327, Docket Entry 20 at 15.)

The Court will assume, as other courts appear to have done, that placement in solitary confinement for such a length of time constitutes more than a de minimis restriction on a pretrial detainee's liberty. See Stevenson v. Carroll, 495 F.3d 62, 69 (3d Cir. 2007) ("Although pretrial detainees do not have a liberty interest in being confined in the general prison population, they do have a liberty interest in not being detained indefinitely in the SHU [Special Housing Unit] without explanation or review of their confinement."); Zarnes v. Rhodes, 64 F.3d 285, 291 (7th Cir. 1995) ("The state cannot place a detainee in segregation for no reason . . . ."). But see Gannon v. McDaniels, No. 7:08CV570, 2008 WL 5262693 (W.D. Va. Dec. 17, 2008) (unpublished) ("[The plaintiff] does not allege facts indicating that segregation conditions present more than de minimis inconvenience so as to offend a detainee's Due Process rights. Accordingly, the court cannot find that . . . his retention in [the Special Housing Unit for up to four months] for unidentified administrative reasons constitutes a deprivation of Due Process rights."). However, the fact that the Court must make an assumption in this regard based on authority from other circuits and that authority (in the form of a district court decision from within this Circuit) appears to support a

-27-

contrary view confirms that the qualified immunity defense entitles Defendants Shoaf and Grice to summary judgment. See McVey v. Stacy, 157 F.3d 271, 277 (4th Cir. 1998) ("When determining whether a reasonable officer would have been aware of a constitutional right, we do not impose on the official a duty to sort out conflicting decisions or to resolve subtle or open issues.").

If the Court moved on to other issues beyond the question of whether Plaintiff's placement in solitary confinement involved more than a de minimis imposition on his liberty interests, it would reach the same result. For example, Plaintiff has come forward with no evidence to support his bald allegation that Defendant Shoaf (with Defendant Grice's acquiescence) placed Plaintiff in solitary confinement in order to punish him (by implication, as retaliation for Plaintiff's filing Case No. 1:07CV141 against the Davidson County Detention Center, Defendant Shoaf, and others on February 9, 2007).[13] Defendants Shoaf and Grice, in contrast, each have submitted sworn statements affirmatively denying any such

---

[13] In Plaintiff's response to summary judgment motions filed in two of his related cases, which (in light of the doctrine of liberal construction) the Court treats as intended for filing in response to the summary judgment motions in these cases as well, Plaintiff offered extended argument and cited a number of cases for the proposition that a plaintiff who files a verified complaint need not offer further evidence to avoid summary judgment when confronted with affidavits from a defendant that contradict material allegations in the plaintiff's complaint. See Rogers v. Davidson County Detention Ctr. of Lexington N.C., et al., No. 1:07CV141 (M.D.N.C.) (Docket Entry 43); Rogers v. Davidson County Detention Ctr. Lt. Bailey, No. 1:07CV323 (M.D.N.C.) (Docket Entry 23). Plaintiff, however, can derive no benefit from this argument or any such authority because he did not file a verified complaint in these cases. (See Case No. 1:07CV326, Docket Entry 1; Case No. 1:07CV327, Docket Entry 1.)

intent and instead explaining that they took the action in question as an administrative response to legitimate security concerns.

Specifically, as detailed above in the Background section, Defendants Shoaf and Grice explained that a female jail employee became alarmed by the manner in which Plaintiff addressed her in a grievance dated February 28, 2007. After reviewing the matter, Defendants Shoaf and Grice concurred in the employee's perception that, by referring to the employee by her private, family nickname (and thus demonstrating that he had the ability to acquire personal information about her), Plaintiff had made an implied threat. In addition to their affidavits, Defendants Shoaf and Grice have submitted an authenticated copy of the grievance in question to corroborate their account. Finally, Defendant Shoaf has averred that Plaintiff was released from solitary confinement after it was determined that he no longer posed a threat (including because Plaintiff had apologized to the jail employee who had felt threatened) and a document attached to Plaintiff's Complaint (discussed in the Background section above) appears to show that Plaintiff, in fact, apologized to said employee.

Given that the Supreme Court has directed federal courts to defer to the judgment of jail officials regarding such matters absent substantial evidence of disproportionate response, <u>Bell</u>, 441 U.S. at 540-41 n.23, and that the Fourth Circuit has cautioned federal courts in this Circuit to approach conclusory claims of unlawful retaliation brought by prisoners against prison officials "with skepticism," <u>Adams v. Rice</u>, 40 F.3d 72, 74 (4th Cir. 1994),

-29-

the record in this case, at a minimum, establishes the right of Defendants Shoaf and Grice to summary judgment based on qualified immunity. As the Seventh Circuit observed in another case where a pretrial detainee filed a § 1983 claim based on his placement in solitary confinement:

> It does not appear that, at the time the defendants acted, the law was sufficiently clear to apprise them that maintaining [the plaintiff] in segregation throughout the period in question was not sufficiently related to the legitimate governmental objective of maintaining good order and discipline within the detention facility or that it was excessive in light of that objective.

Rapier, 172 F.3d at 1006.[14]

As a final matter, to the extent the record might support the view that Defendants Shoaf and Grice placed Plaintiff in solitary confinement as "punishment" (not as a nonpunitive administrative security measure), the record reflects that such punishment arose due to Plaintiff's action while in pretrial detention (i.e., his attempt to intimidate the female jail employee through the use of her private, family nickname). Although it does not appear that Plaintiff received a disciplinary hearing in connection with any such "punishment," the record does establish that Plaintiff had

---

[14] In this regard, the Court notes that it does not appear unreasonable for jail officials to take strong administrative action when a detainee awaiting trial on serious charges involving forced entry into a residence to commit rape appears to have attempted to intimidate a female jail employee by addressing her by a private, family nickname in a grievance, particularly given that the grievance appears to reflect an unreasonably high level of anger misdirected at said employee regarding matters as to which she apparently lacked any responsibility. Although reasonable minds might disagree about the effectiveness of the administrative response Defendants Shoaf and Grice selected to neutralize the perceived threat, the qualified immunity defense exists to protect public officials from civil liability based on those sorts of disagreements.

notice that his method of addressing the jail employee led to his placement in solitary confinement, that Plaintiff had a chance to respond to this allegation against him (which he did by apologizing), and that Defendant Shoaf considered Plaintiff's response in deciding to end his placement in solitary confinement. Under these circumstances, the Court cannot say that Defendants Shoaf and Grice violated clearly established law by imposing punishment for misconduct committed by Plaintiff during pretrial detention without adequate procedural safeguards.

Again, the Court finds the Seventh Circuit's ruling in analogous circumstances instructive:

> [E]ven if the acts of defendants constituted punishment under Bell, it was not clearly established, at the time the defendants acted, that certain procedural protections must attend any disciplinary measures taken against pretrial detainees. Although Bell had established that a pretrial detainee could not be punished for the underlying offense for which he was being held, the law was not clearly established with respect to the need for additional procedural safeguards when prison officials impose punitive sanctions for misconduct while awaiting trial. Nor was it clearly established how one ought to differentiate between administrative action designed to assure the safe running of the facility and punitive action. Under these circumstances, we believe that the district court's judgment ought to be affirmed on the ground that the defendants are entitled to qualified immunity.

Id.

## CONCLUSION

Plaintiff's Complaint establishes that he failed to exhaust his administrative remedies as to five of the six claims he now seeks to litigate against Defendant Shoaf. The PLRA precludes Plaintiff from proceeding with those five claims at this time and

-31-

dismissal is appropriate under <u>Anderson</u>.  Further, Plaintiff failed
to respond to the portion of Defendant Shoaf's summary judgment
motion regarding the non-exhaustion issue.  Under this Court's
Local Rules, Plaintiff thus has conceded the exhaustion issue as to
those claims.  Given that concession and the absence of any record
evidence that could support a finding of exhaustion, Defendant
Shoaf's summary judgment motion should be granted on non-exhaustion
grounds as to those five claims.

As to Plaintiff's remaining claim against Defendant Shoaf and
his only claim against Defendant Grice (i.e., that Defendants Shoaf
and Grice wrongfully caused Plaintiff's placement in solitary
confinement on March 5, 2007), a document attached to Plaintiff's
Complaints in these cases raises a material question of fact as to
whether Plaintiff exhausted his administrative remedies.  The Court
thus should not dismiss that claim under <u>Anderson</u> or grant summary
judgment as to that claim on non-exhaustion grounds.  However,
because Plaintiff has failed to point to any record evidence
showing that Defendants Shoaf and Grice violated a clearly
established right by causing Plaintiff's placement in solitary
confinement on March 5, 2007, the Court should grant summary
judgment to them on grounds of qualified immunity on that claim.

Finally, the respective motions by Defendants Shoaf and Grice
to strike Plaintiff's supplemental response in opposition to a
summary judgment motion in a related case are moot.

**IT IS THEREFORE RECOMMENDED** that, in Case No. 1:07CV326,
except as to Plaintiff's claim regarding the decision to place him

-32-

in solitary confinement on March 5, 2007, Defendant Shoaf's Motion for Summary Judgment (Docket Entry 16) be **GRANTED** to the extent it relies on Plaintiff's failure to exhaust administrative remedies and that, as to those claims, this action be **DISMISSED WITHOUT PREJUDICE** to re-filing if and when Plaintiff exhausts his administrative remedies as to said claims.

IT IS FURTHER **RECOMMENDED** that, in Case No. 1:07CV326, as to Plaintiff's claim regarding the decision to place him in solitary confinement on March 5, 2007, Defendant Shoaf's Motion for Summary Judgment (Docket Entry 16) be **GRANTED** based on the doctrine of qualified immunity and that said claim be **DISMISSED WITH PREJUDICE.**

IT IS FURTHER **ORDERED** that, in Case No. 1:07CV326, Defendant Shoaf's Motion to Strike (Docket Entry 20) is **DENIED AS MOOT.**

IT IS FURTHER **RECOMMENDED** that, in Case No. 1:07CV327, Defendant Grice's Motion for Summary Judgment (Docket Entry 19) be **GRANTED** based on the doctrine of qualified immunity and that Plaintiff's action be **DISMISSED WITH PREJUDICE.**

IT IS FURTHER **ORDERED** that, in Case No. 1:07CV327, Defendant Grice's Motion to Strike (Docket Entry 23) is **DENIED AS MOOT.**

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

June 28, 2010

-33-